

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
03/16/2017

| | § | |
|---|---|---|
| IN RE | § | |
| | § | |
| | § | |
| ZAFS INVESTMENTS, LLC, | § | CASE NO. 15-36237-H5-11 |
| | § | |
| Debtor, | § | |
| | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER ON CONFIRMATION AND OBJECTION TO CLAIM OF HARDIAL MANGAT

Before the court are confirmation of Debtor's Second Amended Plan of Reorganization (Docket No. 94) and Debtor's Amended Objection to the Claim of Hardial Mangat (Docket No. 89). The Court has heard testimony regarding the plan. Although Mangat had the burden of proof as to his claim, he presented no evidence in support of his claim. The Court allows Mangat's claim in the amount of $1,026,514.77, and sets an additional status hearing as to the direction of this case.

### I. History of Zafs Investments, LLC

On December 30, 2014, Debtor Zafs Investments, LLC purchased a banquet hall and an adjacent tract used for parking from Hardial Mangat. Mangat provided financing for the purchase. Debtor executed a note payable to Mangat in the original principal amount of $1 million. The note provided for a regular interest rate of 8 percent, and a default interest rate on unpaid, matured amounts of 18 percent. The

note called for 60 monthly payments of $7,337.65, beginning in January 2015, and a balloon payment due in December 2019. (Claim No. 7-1).

After Debtor completed the purchase of the banquet hall and parking lot, Debtor's managing member, Farhan Sultan, discovered mold in the banquet hall. Debtor incurred substantial expenses in removing the mold and renovating the banquet hall, and was unable to open the banquet hall until October 2015. Debtor filed the Chapter 11 petition in this case on November 30, 2015.

On May 31, 2016, Debtor filed a motion for approval of a lease agreement to lease the banquet hall to Akusa Food, Inc., on a triple net lease with base rent of $14,500 per month. The Court approved the lease agreement at the June 21, 2016 hearing.

## II. Mangat's Proof of Claim Is Allowed Without Default Interest or Attorney Fees

Mangat filed a proof of claim in the amount of $1,072,175.93. Mangat asserts amounts of $989,195.35 for principal, $59,632.08 for interest through the petition date at the default rate of 18 percent, $4,796.00 for escrow, and $18,552.50 for attorney fees. (Claim No. 7-1).

Debtor objects to the claim for interest at the default rate and the attorney fees. If objection is made to the proof of claim, the objecting party has the burden to

present enough evidence to overcome the prima facie effect of the claim. *Matter of O'Connor,* 153 F.3d 258, 260–261 (5th Cir. 1998). If the objecting party succeeds, the creditor must prove the validity of the claim. *Id.*

Debtor's objection overcomes the prima facie effect of the proof of claim. Debtor disputes the application of the default rate of interest to the balance of the note, and the allowance of attorney fees. The burden was thus shifted to Mangat to prove entitlement to default interest and attorney fees. Mangat presented no evidence in support of his claim for default interest and attorney fees. The Court concludes that default interest and attorney fees are disallowed.

The allowed amount of Mangat's claim is $1,026,514.77. This amount consists of principal of $995,208.13, prepetition interest of $26,510.64 at the contract rate of 8 percent, and escrow of $4,796.00.[1]

### III. Monthly Payments of $3,703.70 are Required to Satisfy Section 1129(b)(2)(A)(i)(II)

On September 23, 2016, Mangat made an election under Section 1111(b)(2) of the Bankruptcy Code to have his claim treated as a fully secured claim to the extent it is allowed. (Docket No. 86).

Debtor's Second Amended Plan provides for Mangat to retain his lien, and

---

[1] These amounts are calculated based on Mangat's testimony at the hearing June 21, 2016 on Mangat's motion for relief from stay.

N:\zafs.20170313.wpd

provides for Debtor to satisfy Mangat's claim by paying him $2,934.00 per month for 360 months. Mangat's claim is the only claim in Class (3)(b) under the plan. The class is not designated as unimpaired pursuant to §1123(a)(2) of the Bankruptcy Code. (Docket No. 94). Mangat filed a ballot rejecting the plan. (Docket No. 102). Mangat also objected to confirmation on grounds the plan is not fair and equitable as to Class (3)(b), and the plan is not feasible.

After the confirmation hearing, Debtor proposed a modification calling for Debtor to pay Mangat $3,229.79 per month. (Docket No. 116). At the confirmation hearing, Sultan testified that he was willing to expend his own additional funds to ensure the success of the plan.

§1129(a)(8) of the Bankruptcy Code requires that each impaired class accept the plan. Under § 1129(b)(1) of the Bankruptcy Code, on request of the plan proponent, the plan must be confirmed notwithstanding the failure to meet the requirements of § 1129(a)(8), if the plan is fair and equitable with respect to each class impaired class that has not accepted the plan.

§ 1129(b)(2)(A) defines what a plan must provide to be fair and equitable as to a class of secured claims:

(A) With respect to a class of secured claims, the plan provides—

(i)(I) that the holders of such claims retain the liens securing such

> claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and
>
> (II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;
>
> (ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or
>
> (iii) for the realization by such holders of the indubitable equivalent of such claims.

11 U.S.C. § 1129(b)(2)(A).

The total of payments to Mangat under either the plan as filed ($1,056,240) or the modification attached to the proposed confirmation order ($1,162,724.40) exceeds the allowed amount of Mangat's claim ($1,026,514.77).

The question of whether the deferred cash payments have at least the value of Mangat's interest in the estate's interest in the property depends on the value of the property and the proper interest rate to apply in making a present value calculation. Wilburn Trotter testified that the value of the property is $710,000. Trotter's testimony is uncontroverted. The Court finds that the value of the property is $710,000.

In *Till v. SCS Credit Corp.,* 541 US. 465, 124 S. Ct. 1951, 158 L. Ed 2d 787 (2004), the plurality opinion of four justices opined in a Chapter 13 case that a formula approach, in which the national prime lending rate is the presumptive rate, and then the burden is placed on the creditor to prove that an adjustment upward is appropriate, best comports with the purposes of the Code. The plurality observed that most courts apply a 1-3 percent upward adjustment. The Court takes judicial notice that the present prime lending rate is 3.75 percent.

In *Matter of Texas Grand Prairie Hotel Realty, LLC,* 710 F.3d 324 (5th Cir. 2013), the Fifth Circuit held that a cramdown rate of 5 percent, applying the *Till* formula approach, was not clearly erroneous. The Fifth Circuit identified the following factors for determining the proper adjustments to the interest rate: (1) the quality of debtor's management; (2) the commitment of the debtor's owners; (3) the health and future prospects of the debtor's business; (4) the quality of the lender's collateral; and (5) the feasibility and duration of the plan.

In this case, Debtor's management has diligently pursued the development of the Debtor's business, including remediating the mold damage to the banquet hall and finding a long-term tenant. Sultan has committed to the reorganization, including his agreement to supply his own personal funds to make the reorganization succeed. Debtor has a long-term tenant, which will provide a stable income stream to Debtor.

Mangat's collateral is mostly raw land, with the only improvement being a parking lot. The plan is feasible, as demonstrated by the projections attached to Debtor's disclosure statement and Sultan's testimony. There is a slight risk based on the 30 year duration of the plan. The Court finds that an appropriate interest rate to discount to present value the stream of payments to be paid to Mangat over the life of the plan is 4.75 percent. Applying the 4.75 percent interest rate to discount the present value stream, payments of $3,703.70 are necessary to provide for the stream of payments to have a present value of at least the value of the property. In light of the Court's determination as to the required interest rate and payment amount, the Court sets a status hearing for April 3, 2017, at 10:30 a.m. in Courtroom #403.

Signed this 16 day of March, 2017 at Houston, Texas.

KAREN K. BROWN
UNITED STATES BANKRUPTCY JUDGE

N:\zafs.20170313.wpd